UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

KELVIN WELLS                                CIVIL ACTION

VERSUS                                      NO. 12-731-SDD-RLB

DAVID DIVINCENTI, et al.

**NOTICE**

 Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

 In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein.  Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

 **ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

 Signed in Baton Rouge, Louisiana, on February 25, 2014.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **KELVIN WELLS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-731-SDD-RLB** |
| **DAVID DIVINCENTI, et al.** | |

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the Court on referral from the district judge of the Motion to Remand, or For Adoption of Final Judgment of the State Court, or For Dismissal of Complaint, with Request for Debarment filed by Gardere Investments, Inc. and David DiVincenti.[1] The motion is opposed.[2]

I.   Background

On November 19, 2012, Kevin Wells initiated this action against Gardere Investments, Inc. and David DiVincenti, President of the Gardere Mobile Home Park (collectively, "Gardere").[3] The Court has granted Mr. Wells' request to proceed *in forma pauperis* under 28 U.S.C. § 1915.[4]

The allegations in this proceeding arise out of and concern an eviction proceeding brought by Gardere Investments against Mr. Wells in the Justice of the Peace Court, Ward III, District III, East Baton Rouge Parish, Louisiana (Docket No. 2012-14156) (the "State Court" action).[5] Although filed on the court-approved form complaint, Mr. Wells is actually attempting to remove the State Court action under 28 U.S.C. § 1443, as evidenced by his request for relief to

---

[1] R. Doc. 13.  Gardere filed a Reply memorandum.  (R. Doc. 21).
[2] R. Docs. 14, 16.
[3] R. Doc. 1.
[4] R. Doc. 9.
[5] R. Doc. 1-1 at 10.

1

remove the "case from the Justice of Peace Court" and the attachment of a "Notice of Removal" seeking to remove the State Court action.[6] The form complaint alleges that Gardere has violated the federal Fair Housing Act, 42 U.S.C. §§ 3601-31 ("FHA"), the Louisiana Equal Housing Opportunity Act, La. R.S. 51:2601, *et seq*,[7] and the Civil Rights Act of 1968.[8] Mr. Wells alleges that his eviction was based on discriminatory reasons and in retaliation for several complaints he previously filed with state and federal agencies. The "Notice of Removal" further states that the Justice of the Peace Court rules unfairly against African Americans and holds more than $1,500 in funds that belongs to Mr. Wells and his family.[9]

The timeline of events is difficult to decipher from Mr. Wells' pleading and attachments. The attached lease agreement provides that Mr. Wells has leased a lot at the Gardere Mobile Home Park since February, 2006.[10] During his tenancy, Mr. Wells has submitted several complaints to federal and state authorities alleging that other tenants at the mobile home park (which Mr. Wells characterizes as "illegals" and "Hispanics") have committed various crimes sanctioned by Gardere or have otherwise received preferential treatment by Gardere.[11] On December 12, 2007, Mr. Wells entered into a conciliation agreement with Mr. Obrey Beaudoin, the current or former manager of the Gardere Mobile Home Park, which was approved by the

---

[6] R. Doc. 1-1 at 6-7. The "Notice of Removal" states that it was served on Gardere on November 16, 2012, three days before Mr. Wells initiated this action.

[7] "The [Louisiana Equal Housing Opportunity] Act is substantially equivalent to the federal housing act and makes it unlawful to racially discriminate against any person in the provision of services or facilities in connection with the sale or rental of a dwelling." *Wells v. State Attorney Generals of La.*, 469 F. App'x 308, 310 (5th Cir. 2012).

[8] Title VIII of the Civil Rights Act of 1968 is the FHA.

[9] The Justice of the Peace Court is not a party in this action.

[10] R. Doc. 1-1 at 14.

[11] Mr. Wells also submits two news reports concerning crimes allegedly committed by residents at the mobile home park, both of which contain Mr. Wells' handwritten comments. The first news report concerns allegations that a resident at the named Pedro Cervantes hit a 5-year old child riding a bike while driving in the mobile home park. (R. Doc. 1-1 at 38). Mr. Wells comments that Mr. DiVincenti did not evict the driver or his family. The other news report concerned allegations that another resident, Mr. Juan Reza Ortiz, fatally beat a woman to death in Austin, Texas. (R. Doc. 1-1 at 48). In his handwritten comments, Mr. Wells states that "illegals" and "fugitives" like Mr. Ortiz have a "sanctuary" in the mobile home part. It is unclear whether these comments were submitted as part of formal complaints.

2

Louisiana Attorney General.[12]  In the conciliation agreement, Mr. Beaudoin (presumably on behalf of Gardere) agreed to place a security camera at the mobile home park "to try to stop any act of vandalism, misconduct, [or] criminal activity by any tenant or visitor."[13]

On June 4, 2011, Mr. Wells filed another complaint with the U.S. Department of Housing and Urban Development ("HUD"), claiming that Mr. DiVincenti failed to honor the conciliation agreement, that the "illegal" tenants had "destroyed or damaged" his property several times over the past 5 years, and that those same "illegal" tenants have been violent toward black tenants.[14] Mr. Wells further alleged in his HUD complaint that, unlike with the black tenants, Gardere does not require the "illegal" tenants to produce valid identification, credit checks, criminal backgrounds, and employment information to enter into leasing agreements.[15]

Just before receiving the eviction notice, Mr. Wells also made complaints regarding standing water and unkempt grass.  On August 8, 2012, Mr. Wells submitted a complaint to the Louisiana Department of Health and Hospitals, Office of Public Health regarding standing water in an adjacent lot.[16]  On August 23, 2012, Mr. Wells complained that the grass was overgrown in his lot.[17]

On September 12, 2012, Mr. DiVincenti sent Mr. Wells an eviction letter stating that he did not wish to renew the lease and that his final day in the mobile home park would be October

---

[12] R. Doc. 1-1 at 34-35.
[13] R. Doc. 1-1 at 34.  This court dismissed another civil lawsuit in which Mr. Wells sued the Louisiana State Attorney General, Public Protection Division for allegedly conducting its investigation of his complaints with discriminatory intent.  *See Kelvin Wells v. Louisiana State Attorney General*, No. 10-376 (M.D. La. May 25, 2011), *appeal dismissed*, 469 Fed. App'x 308 (5th Cir. 2012).
[14] R. Doc. 1-1 at 19-20.
[15] R. Doc. 1-1 at 20.  Mr. Wells also submits a Freedom of Information Act (FOIA) request with Senator David Vitter sent on June 15, 2012, seeking information from the U.S. Department of Homeland Security and the U.S. Border Patrol.  R. Doc. 1-1 at 53.
[16] R. Doc. 1-1 at 35, 49.
[17] R. Doc. 1-1 at 19.  It appears that this complaint was made to the City of Baton Rouge.

30, 2012.[18]  In a letter to the Louisiana Attorney General, Mr. DiVincenti stated that he chose not to renew the lease because Mr. Wells had harassed him "regarding paying for his personal items such as air conditioners, motor vehicles, swimming pool etc." that were allegedly damaged in the mobile home park.[19]

After receiving the eviction letter, Mr. Wells began sending additional complaints to federal agencies regarding alleged discrimination by Gardere.  On or about October 30, 2012, Mr. Wells filed a complaint with the U.S. Department of Justice ("DOJ"), alleging that Gardere first discriminated against him in March 2006 and that their final act of discrimination was the eviction letter.[20]  As with his earlier complaints, the DOJ complaint alleges that Gardere favored "illegal" and "Hispanic" tenants to the detriment of the black tenants.[21]  In addition to the DOJ complaint, Mr. Wells sent letters of complaint to HUD and his Congressman after he was provided the eviction letter.[22]

On November 21, 2012, the Justice of the Peace issued a judgment in favor of Gardere Investments in the eviction proceeding.[23]  The same day, Mr. Wells filed an appeal of the judgment to the 19th Judicial District Court, East Baton Rouge Parish, Louisiana.[24]

## II.   Arguments of the Parties

Gardere argues that the Court should construe this action as an attempt to remove the State Court action.  Gardere argues that Mr. Wells' attempt at removal is lacking because "the petition in the State Court Proceeding does not raise any federal issue; diversity of citizenship is lacking; and the civil rights removal statute, 28 U.S.C. § 1443, is unavailable because Plaintiff

---

[18] R. Doc. 1-1 at 16-17.
[19] R. Doc. 1-1 at 45.
[20] R. Doc. 1-1 at 26-30.
[21] R. Doc. 1-1 at 28.
[22] R. Doc. 1-1 at 21-22, 31-32, 44, 46-47.
[23] R. Doc. 13-2.
[24] R. Doc. 13-3.

cannot demonstrate that the federal rights Plaintiff asserts cannot be enforced in the courts of the State of Louisiana, and cannot demonstrate that any civil rights law immunizes him from a suit for eviction."[25]  Furthermore, Gardere claims that Mr. Wells did not give notice of the removal to the State Court until after that court issued its judgment in favor of Gardere.  Gardere argues that if removal of the State Court action was proper, then the Court should adopt the State Court's judgment as its own, so that the appeal can continue in the federal system.

To the extent this Court construes Mr. Wells' filing as initiating an action independent of the State Court action, Gardere seeks dismissal under Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure, and under 28 U.S.C. § 1915(e).  Gardere argues that Mr. Wells does not allege a plausible cause of action against Gardere under the asserted federal and state civil rights statutes.

Finally, Gardere requests the Court to debar Mr. Wells from filing further proceedings in this Court based on Mr. Wells' history of filing meritless lawsuits alleging violations of his civil rights in this Court and in appeals to the Fifth Circuit.

Mr. Wells filed two response memoranda.[26]  These memoranda clarify that Mr. Wells is seeking to remove the State Court action rather than initiate an independent action.  Mr. Wells once again invokes 28 U.S.C. § 1443 as a basis for removal.[27]  Mr. Wells' only direct response to Gardere's arguments in these memoranda is his assertion that the Justice of the Peace Court received notice of the removal before it issued its judgment.[28]  Mr. Wells does not submit any

---

[25] R. Doc. 13 at 2.
[26] The first response memorandum is styled "Plaintiffs Response, Motion to Compel, Opposition to Dismissal, Interrogatories Attached."  (R. Doc. 14).  The second response memorandum is styled "Plaintiffs Memorandaum in Opposition to Defendants Motion to Remand, Adoption of State Courtor (sic) Dismissal with Exhibits."  (R. Doc. 16).
[27] R. Doc. 16.
[28] R. Doc. 14 at 1.

proof in support of this assertion.[29] Mr. Wells further states that he has exhausted all administrative remedies required of him, although he characterizes the nature of his action as a removal.[30] Mr. Wells claims that his due process and equal protection rights were violated because the Justice of the Peace assigned to the eviction action was chosen by another Justice of the Peace who recused himself or herself from the proceeding.[31]

### III. Law & Analysis

#### A. Nature of the Instant Action

Mr. Wells represents himself *pro se* and his pleadings are to be held "to less stringent standards than formal pleadings drafted by lawyers." *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (finding allegations in a pro se complaint are to be held "to less stringent standards than formal pleadings drafted by lawyers"); *see also SEC v. AMX, Int'l, Inc.*, 7 F.3d 71, 75 (5th Cir. 1993) (recognizing the established rule that this court "must construe [a pro se plaintiff's] allegations and briefs more permissively"). That said, Mr. Wells' *pro se* status does not offer him "an impenetrable shield, for one acting *pro se* has no license to harass others, clog the judicial machinery with meritless litigation and abuse already overloaded court dockets." *Wells v. Transocean Terminal Operators*, No. 11-19, 2011 WL 2883003, at *2 (M.D. La. June 22, 2011) (quoting *Farguson v. MBank Houston, N.A.,* 808 F.2d 358, 359 (5th Cir. 1986)), *report and recommendation adopted*, 2011 WL 2938018 (M.D. La. July 15, 2011).

Based on the pleadings and the record, the Court construes this action as an attempt to remove the State Court action. Although Mr. Wells filed a court-approved form complaint, he explicitly requests removal and invokes 28 U.S.C. § 1443, the civil rights removal statute. In the

---

[29] Gardere submitted a declaration by Mr. DiVincenti claiming that Mr. Wells did not inform the Justice of the Peace of this action prior to the entry of judgment in the State Court action.
[30] R. Doc. 14 at 1.
[31] R. Doc. 16.

6

Prayer for relief, Mr. Wells foremost requests the Court to "Remove case from Justice of Peace Court."[32] The Notice of Removal attached to the form complaint expressly requests removal of the "matter docketed as 2012-14156 to the Federal Court from the Justice of the Peace Court."[33]

Additional filings by Mr. Wells clarify any ambiguity regarding whether he seeks to remove the State Court action. In one of his opposition memoranda, Mr. Wells states that the Justice of the Peace Court "received notice of removal before its decision" and that the Justice of the Peace Court has deprived him of his federal rights to due process and equal protection.[34] Furthermore, Mr. Wells has filed an "Answer to Petition and Eviction Order" seeking to answer the eviction petition filed in the State Court action.[35] Mr. Wells also seeks to compel responses to interrogatories he claims were first served "with notice of removal to the US District Court and Complaint in November(14), 2012."[36] Mr. Wells also submits a document served on the Justice of the Peace Court titled in part "Error in Appeal Placement" providing that a "notice of removal was submitted to the Justice of the Peace Ward III District II in accordance with Federal Rules 28 [U.S.C. §] 1443" on November 11, 2012, and, therefore, the judgment of eviction is "null and void."[37]

Considering Mr. Wells' clear intent to remove the eviction proceeding, the court construes Mr. Wells' filing, in whole, as a Notice of Removal. *See Middleton v. Emerson*, No. 11-2535, 2011 WL 5320978, at *2 (D.S.C. Oct. 13, 2011) (construing *pro se* plaintiff's form complaint as a notice of removal); *see also Anderson v. Nebraska*, 530 F. Supp. 19 (D. Neb. 1981) (rejecting plaintiff's argument that attempted removal of divorce proceeding under 28

---

[32] R. Doc. 1 at 2.
[33] R. Doc. 1-1 at 6.
[34] R. Doc. 14 at 1-2.
[35] R. Doc. 17.
[36] R. Doc. 14 at 2.
[37] R. Doc. 14-1 at 4-5.

7

U.S.C. § 1443 sought to initiate an original action); *Hall v. Crosland*, 311 F. Supp. 106 (M.D. Ala. 1970) (construing complaint in the alternative as a notice of removal); *but see Widtfeldt v. Nebraska Equal Opportunity Com'n*, No. 8:09CV88, 2009 WL 3380667, at *1 (D. Neb. Oct 14, 2009) (stating that plaintiff's intentions with respect to removal were unclear and complaint was wrongly docketed as a "Notice of Removal").[38]

The court will, therefore, proceed to analyze whether the State Court action, an eviction proceeding under Louisiana law, was properly removed to this Court under 28 U.S.C. § 1443, the civil rights removal statute.[39]

### B. Motion to Remand

The civil rights removal statute authorizes the removal of a civil action pending in State court, even if the action would not otherwise be removable under the court's original jurisdiction:

> (1) Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof;
>
> (2) For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law.

28 U.S.C. § 1443. Removal statutes are strictly construed in favor of remand. *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008). The burden of establishing federal jurisdiction is

---

[38] In the future, Mr. Wells should not file Notices of Removal by using the court-approved form complaint.
[39] The Court can find no other potential ground for removal. Removal is not proper under the diversity jurisdiction statute, 28 U.S.C. § 1332, because the parties are both citizens of Louisiana. Even if the parties were diverse and the amount in controversy had been met, Mr. Wells could not remove because he is a citizen of the forum state. 28 U.S.C. § 1441(b)(2). Removal is also not proper under the federal question statute, 28 U.S.C. § 1331, because the federal issues were not raised by Gardere Investments in the State Court petition. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("[F]ederal jurisdiction exists only when a federal question is presented on the face of plaintiff's properly pleaded complaint."); *see also Ortiz v. Hillard*, No. H-10-MC-0156, 2010 WL 2195652, at *2 (S.D. Tex. June 1, 2010) (eviction action did not contain a question of federal law under the well-pleaded complaint rule).

8

heavy, and it is borne by the removing party. *Burden v. General Dynamics Corp.,* 60 F.3d 213, 217 (5th Cir. 1995).

Mr. Wells does not identify the subsection of § 1443 under which he seeks removal. The Supreme Court has held "that the second subsection of [§] 1443 confers a privilege of removal only upon federal officers or agents and those authorized to act with or for them in affirmatively executing duties under any federal law providing for equal civil rights." *City of Greenwood, Miss. v. Peacock*, 384 U.S. 808, 824 (1966); *see Charter School of Pine Grove, Inc. v. St. Helena Parish School Bd.*, 417 F.3d 444, 446 (5th Cir. 2005). Accordingly, because Mr. Wells is not claiming to be a federal officer or agent, his right to removal must exist, if at all, under 28 U.S.C. § 1443(1).

Under 28 U.S.C. § 1443(1), Mr. Wells must satisfy a two-pronged test to remove an action. *Georgia v. Rachel*, 384 U.S. 780 (1966). First, Mr. Wells must prove that the rights allegedly denied to him arise under a federal law "providing for specific civil rights stated in terms of racial equality." *Id*. at 792. Second, Mr. Wells must prove that he has been "denied or cannot enforce" the specific civil rights in State court. *Id*. at 794.[40] The Supreme Court explained this requirement as follows:

> Under § 1443(1), the vindication of the defendant's federal rights is left to the state courts except in the rare situations where it can be clearly predicted by reason of the operation of a pervasive and explicit state or federal law that those rights will inevitably be denied by the very act of bringing the defendant to trial in the state court.

*Peacock*, 384 U.S. at 828. Section 1443(1) "has consistently been construed narrowly to require strict satisfaction of both the 'civil rights' element and the 'enforcement' element intrinsic within it." *Smith v. Winter*, 717 F.2d 191, 194 (5th Cir. 1983).

---

[40] In *Rachel*, the Supreme Court found such "narrow circumstances" where plaintiffs had refused to leave facilities of public accommodation after being ordered to do so because of race. They were charged with criminal trespass under Georgia law despite being protected from prosecution or conviction under such circumstances by the Civil Rights Act of 1964. *Id*. at 804.

9

Here, Mr. Wells' retaliation claims arguably arise under a federal law, the FHA, "providing for specific civil rights stated in terms of racial equality."[41] The court need not decide, however, whether the FHA qualifies as an equal civil rights statute under the first prong of the *Rachel* test because even if it does, Mr. Wells cannot satisfy the second prong of the test.

Mr. Wells has not shown that any Louisiana law or policy prevents him from raising his federal claims or rights under the FHA, as either defenses or counterclaims, in the State Court action. In fact, at least one Louisiana court has expressly recognized that Louisiana law does not "preclude a tenant from asserting defenses which are germane to the landlord's right of possession," including the defense of discrimination brought under the FHA, in an eviction proceeding. *See Mascaro v. Hudson*, 496 So.2d 428, 429 (La. App. 4 Cir. 1986); *see also Henlopen Landing Homeowners Ass'n v. Vester*, No. 12-308, 2013 WL 1704889, *21 (D. Del. Apr. 19, 2013) (remanding case to state court and noting that "Defendants are free to assert their counterclaims (i.e., that Plaintiff is racially motivated and attempting to unlawfully intimidate Defendants for exercising their FHA rights) in state court, with the state court empowered to address the merits of those claims without interference from this Court") *report and recommendation adopted*, No. 12-308, R. Doc. No. 18 (D. Del. May 14, 2013); *Water's Edge Habitat, Inc. v. Pulipati*, 837 F. Supp. 501 (E.D.N.Y. Sept. 30, 1993) (removal under 28 U.S.C. § 1443(1) improper where defendant was entitled to present all legal and equitable defenses under state or federal law).

---

[41] Although it does not appear that the Fifth Circuit has directly addressed whether the FHA is a law "providing for . . . equal civil rights based on racial equality" that can support removal under 28 U.S.C. § 1443(1), other courts have reached this conclusion. *See Sofarelli v. Pinellas County,* 931 F.2d 718, 721 (11th Cir.1991) (first prong satisfied where defendant asserted protection under the Fair Housing Act); *Emigrant Sav. Bank v. Elan Mgmt. Corp.,* 668 F.2d 671, 673 (2d Cir. 1982) (same). Mr. Wells also invokes his due process and equal protection rights based upon the selection of the Justice of the Peace in the State Court action. Such broad constitutional claims do not satisfy the first prong of the *Rachel* test. *See State of Ga. v. Spencer*, 441 F.2d 397, 398 (5th Cir. 1971) (due process); *Smith v. Winter*, 717 F.2d 191 (5th Cir. 1983) (equal protection).

Mr. Wells accuses the Justice of the Peace Court of unfairness but does not show "how his civil rights, as they pertain to racial equality, would be denied in state court in the instant action that is in question." *Paris v. GMAC Mortgage Corp.*, No. 06-01489, 2006 WL 3201312, at *2 (D. Colo. Nov. 1, 2006) (denying removal of eviction proceeding under 28 U.S.C. § 1443). Mr. Wells has presented no evidence that the eviction proceeding before the Justice of the Peace Court, which is subject to appellate review by other Louisiana courts, will inevitably result in a violation of Mr. Wells' rights under the FHA.  Mr. Wells' contention that the Justice of the Peace assigned to his eviction proceeding should not have been assigned is not within the province of § 1443 and does not satisfy the requirements set forth in *Rachel*.

For the foregoing reasons, Mr. Wells' attempt to remove the State Court action fails to meet the requirements for § 1443(1) jurisdiction and the State Court action should be remanded for further proceedings.  Having concluded that this action is a removal action for which this court does not jurisdiction, the court need not address Gardere's remaining arguments regarding how to proceed with this action were it properly removed.

### C.    Request for Debarment

Gardere represents that Mr. Wells has filed more than thirty (30) lawsuits in this Court accusing various public and private parties of civil rights violations, all of which have been dismissed.[42]  Gardere seeks to have Mr. Wells debarred from being able to file any further proceedings in this Court. [43]

Although the undersigned recommends remand, the instant action is a colorable attempt to remove an eviction proceeding under 28 U.S.C. § 1443.  That said, the Court once again warns Mr. Wells that under "28 U.S.C. § 1915(e), this Court is authorized to dismiss an action brought

---

[42] *See* R. Doc. 13-1 at 14 n.1 (citing cases).
[43] R. Doc. 13-1 at 15.

11

*in forma pauperis* if satisfied that the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." See *Wells v. Magnolia Woods Elementary Sch.*, No. 11-603-JJB, 2012 WL 6569294, at *1 (M.D. La. Nov. 8, 2012) (citing *Green v. McKaskle,* 788 F.2d 1116 (5th Cir. 1986) *report and recommendation adopted*, 2012 WL 6588501 (M.D. La. Dec. 17, 2012).  The Fifth Circuit has also warned Mr. Wells of similar consequences, including potential sanctions. *See E. Baton Rouge Parish Sch. Bd. v. Wells*, 467 F. App'x 294, 295 (5th Cir. 2012) (warning Mr. Wells "that future frivolous, repetitive, or otherwise abusive filings may result in the imposition of sanctions, including dismissal, monetary sanctions, and restrictions on his ability to file pleadings in this court or any court subject to this court's jurisdiction.").

## RECOMMENDATION

It is the recommendation of the magistrate judge that Gardere's Motion to Remand (R. Doc. 13) be **GRANTED** and the case be remanded to the Justice of the Peace Court, Ward III, District III, East Baton Rouge Parish, Louisiana.

Signed in Baton Rouge, Louisiana, on February 25, 2014.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**